Case number 3-16-0418. People of the State of Illinois. Affidavit by Mark Austell v. Alejandro Reveles. Appellant by Brian Carroll. Proceed, counsel. Your Honor, counsel. I have a piece of court. I'm Brian Carroll from the State Appellant Defender's Office. Representing Mr. Reveles. Can everybody hear? Mm-hmm. Okay. Go ahead. I will be addressing Arguments 1 and 2, if you may agree. If you have any questions on those ones, please ask them. As for Argument 1, the State concedes that the Court committed clear error by not complying with Supreme Court Rule 4-3-19. Therefore, the only question here is whether or not the individual was close. And it was. Therefore, those convictions should be reversed in the case of a man in criminal trial. I want to disagree. The State argues that the posting of wrong and clear error is a sufficiency of the evidence. However, our Supreme Court has decidedly held that the question of whether evidence is close is not a sufficiency of the evidence. It's simply the closeness of the sufficient evidence. And Mr. Reveles is not arguing that the State's evidence was insufficient in this case. He's simply arguing that the evidence was sufficient and was close. And the question of the closeness of the evidence, there's no evidence of any physical injuries collaborating with J.P.'s claims. And there are a number of reasons why the jury could find J.P. not credible. Now, she said that she locked the bedroom door and the bell had broken open. However, her son testified, no, the bedroom door was already broken before the incident. She testified, well, she changed the locks when Reveles moved out of the house. Again, her son, I know, his locks were never changed. And J.P. herself acknowledged to previously testifying that her bell had still had keys. Now, she testified at trial that throughout the incident, Reveles grabbed her and pushed her. And then at one point, he strangled her to the point where she almost lost consciousness. However, when she eventually called the police, she told the operator that he didn't touch her physically. And she never told the responding officers that he strangled her. In fact, when she called the police, she never initially claimed that she was assaulted at all. She simply stated that the bell was broken into her house. And it wasn't until the operator asked her a number of times whether she needed an ambulance that she claimed she had been assaulted. Now, all of these things gave the jury a reason to find her not credible. And in fact, they did not find all of her claims credible, as established by the fact that it included Reveles on domestic violence charges. And if they did not find her testimony regarding the strangle to be sufficiently credible, they may well have had lingering questions about her other claims as well, such that they may have assessed the evidence differently and found in favor of Reveles' absence to trial for his error. And the nature of the court's error in this case is particularly prejudicial. The court failed to ensure that the jurors understood and accepted that Reveles' failure to testify could not be used against him. And lo and behold, he did not testify after his counsel had promised them a consent defense. So that left the jury wondering, well, what happened to this consent defense? And raised the possibility that they may have held his failure to testify against him. And therefore, because the court's error very well may have caused the jurors to assess the evidence against him, had the court not made this error, it may well have resolved all of his inconsistencies and contradictions against Reveles' failure. Therefore, because it is undisputed that we have a clear error here, and the evidence is close, we have plain error. Therefore, Reveles asked this court to reverse the conditions and remand the case for a new trial. And the basis you're arguing this is the first problem? The first problem. Now for argument number two, Reveles' trial counsel was ineffective for two different but related reasons. First, counsel erred in failing to obtain a pretrial ruling on whether the state would be allowed to impeach Reveles with his prior testimony. And this failure resulted in counsel discrediting the defense in the eyes of the jury by failing to deliver the consent defense he promised in his opening statements. Second, counsel was ineffective for abandoning his consent defense after getting the adverse ruling on impeachment, where his stated reason for doing so was unsound, and the consent defense, had it been presented, may well have changed the outcome of the trial. On a threshold matter, contrary to the state's argument in its brief, counsel did promise a consent defense. He told the jurors point blank, quote, the issue in this case is going to be consent. The only thing the jurors could reasonably infer from those comments was that the theory of the defense was going to be that Reveles and Jayden had sex before he was consensual, and that set them off to expect at some sort of he-say-she-said credibility competition, which never appeared. Second, the state wrongly says that the jury was destructive after consent. By agreement of the parties, no consent instruction was given, and the instruction cited to by the state in this brief was one of the instructions given to Reveles' first trial. Now, as to the first consent defense, it's in counsel's mind whether or not the state would be allowed to impeach Reveles by omission, because his prior testimony was determinative of whether or not counsel would go forward with the consent defense. He needed to get a ruling on that issue before promising anything to the jury. He has no excuse for not doing so. He knew prior to trial that Reveles' testimony would be that he went to Jayden's house in order to pick up money he had left there, and that after the two had a consensual sex, she falsely accused him of rape in order to keep the money for himself. He was also aware that that testimony would have differed from his testimony at the first trial. Therefore, he had to have been aware that if Reveles was going to testify about the money, the state was likely to attempt to impeach him with the prior testimony. So counsel's excuses for not getting a pretrial ruling don't qualify. He argued that, well, because the omission was a result of prior trial counsel's trial strategy, it was not truly impeaching of Reveles' credibility. But even if that's true, he needed to get a pretrial ruling on that, because he couldn't have just assumed that the state received it the same way and therefore not try to impeach him. Second, his argument that the state shouldn't be allowed to impeach an offender by omission where the debilitation of the offender would require the disclosure of some transparent communications. Again, regardless of the merits of that argument, he needed to get a ruling before promising his consent. Well, that ruling can always change, can't it? I mean, ruling on a motion in limine before trial is an interlocutory order, isn't it? And sometimes it says, okay, that's not coming in. Then the way things happen at trial, the other side gets up and says, hey, judge, they've opened the door to that by doing what they just did. And he says, yeah, that's right. I'm going to let them do it. So pre-trial rulings on motions in limine aren't cast in granite. No, it's not. And what the ruling is, it's an important one. It's counsel has to know whether or not he should be promising something to the jury. Let me ask you, on the facts of this case, what other defense did your client have? Just a reasonable doubt. No, but a reasonable doubt as to what? What other defense did he have of this thing other than, gee, there's no signs of force, ergo, you know, she had no injury, no choke marks, and therefore it was consensual. I mean, it had his DNA inside of her. And so what other defense in the real world did he have to argue to the jury other than this was consensual sex? And that's illustrated by the fact that this woman wasn't injured whatsoever. You know, she said she was choked. Well, that's the defense that he put on. And the difference is he's saying, well, the state didn't approve. He's, of course, affirmatively showing consent. They're telling the jury, hey, this is consent. Like, this is a wager. He's not telling this to the jury. He's telling them it's a wager. And when he told them that the issue here is on consent, I think the jury would reasonably think that he was saying, well, if two people have consent, she says it wasn't consensual. He's saying it was, but they would expect to have some affirmative evidence, most likely the testimony of the defendant, to back up that consent. So it's not so much the theory of defense in terms of whether or not the state approved these reports. It's what he sent of the jury to expect affirmative evidence of consent. Well, and you're, again, as you said, these are juries, these are laypeople, and you ought to assume that lawyers and judges understand how real people think and speculate what that jury would have expected based on that. He didn't say, my client's going to get up here and testify that this was consensual sex. He didn't tell them that, did he? No, he didn't explicitly say he was going to testify. I think that's a reasonable inference that the jury would have gotten from his comment. But even if the jury didn't think that, it was still an effect of not putting on consent at all. Because he had already promised, or he had already told the jury that she was going to be consented. He had already started laying the groundwork on what happened if the son testified about his finding money in the house. And if the state did try to impeach them by omission of this prior testimony, counsel could have effectively neutered it by calling the investigator, like the court would have allowed him to do, to show that, no, this was not currently made up, that he talked about this in an earlier trial. And counsel's concerns about attorney-client privilege did not justify his decision. Now, the cost-benefit balance, just to leave this plausible defense unpresented because of theoretical concerns of possible impeachment is unreasonable. It's a bright case that he said he had to leave. It was preconditional because it would have explained why the mother was in the house. It partly collaborated with the son's testimony about his finding of money. The state had already presented evidence about a large sum of money being found in her mother's apartment. So that made it a little more believable that he would have also had a large sum of money at the house he was living. And it provided a reason why J.D. would give the falsely accused evidence. Would it explain the broken vase on the floor and the forced bedroom door? Well, yes, it would because if she falsely accused him, then she could have extinguished that. So it would give him a strong belief of the common narrative. It would also explain why some people thought that J.D. was guilty. But at least a reasonable probability of the outcome of the trial would have been different had counsel not refused it. Thank you. Thank you, counsel. Counsel. May I please support? This first issue defended the assertion that the trial judge did not comply with Supreme Court Rule 431B, acknowledging his forfeiture. This issue defended an extra plenary review of the first problem coming together as a cohesive balance. People acknowledged the trial judge failed to tell the jurors, asked them if they understood and accepted the 431B rule, that the defendant's choice not to testify cannot be held against the defendant. People argue the defendant has forfeited this issue. We stand by our contention that the evidence was not closely balanced. The plenary review does not apply in this case. People are not going to re-answer our extensive argument and prove the establishment that the evidence was not close. We're going to respond to the arguments that you presented as you replied. Thank you. The defendant claimed that because the standard is whether the evidence was close to the balance, the people misstated the law where we stated that the evidence has to be sufficient to prove the charge beyond a reasonable doubt not overwhelming. The people make this statement in response to the defendant's claim in his main brief that the evidence against him was not overwhelming. In Pages 3-4 of our briefing, the clerk quoted and cited a case law applicable to plenary review. We argue in Page 4, the record shows that the evidence was not closely balanced and this court should not grant plenary review if it forfeited this issue. After discussing all the evidence, the people stated, the above demonstrates that the evidence was not close. The defendant notes the people cited authority regarding the sufficiency of the evidence standard as mentioned on Page 6 of our briefing. But the people also cited authority regarding contradictory evidence and that a review in court is not to substitute his judgment as to credibility. The people cited Belknap then concluded, in considering whether evidence was closely balanced, a review in court is going to take the common sense analysis of all the evidence in context. Thus, the people's argument is that the sufficient evidence was not closely balanced. The defendant notes the people conceded that at least one juror did not believe the defendant strangled J.B. and for that reason the defendant was not found guilty of aggravated domestic battery. The defendant then argues in his brief, my brief, that this concession proves the evidence was not entirely convincing to the jury. The fact that the jury, or possibly one juror alone, found the defendant not guilty of aggravated domestic battery, for reasons not on record, does not show that the evidence was close. I'm sorry, does not show that the evidence was close on the jury it was convicted of or that it was close at all. Well, if it was one juror alone, wouldn't that be a hung jury? That they're not guilty? It could be. It depends on the situation. It could end up with a new trial. When you're not guilty, don't all 12 sign it? I'm sorry, Your Honor? Don't all 12 people sign a not guilty verdict? That would be generally true, yes. Can you think of one where it isn't true? So in this case, I'll accept that it would be 12 jurors who said he was not guilty of that particular charge. Defendant says, sadly, on page 1 of his brief, my brief, where it stated the issue in a first-prong analysis is the closeness of insufficient evidence. And the second court engaged in a review of the evidence, noting that the deputy's testimony was largely consistent and so was the testimony of the defendant and his witnesses. The court said minor inconsistencies clouded the testimony on both sides, but neither the prosecution nor the defense counsel that morning's defense were fanciful. And the court considered whether the defense witnesses who were family members were biased, and it said his testimony was corroborated. Thus, the semi-court did not completely divorce the sufficiency of the evidence from a close and balanced analysis. Starting on page 20 of our brief, the people responded to the defendant's main brief arguments, including assertions that Alejandro Jr.'s testimony showed that J.B. had not been truthful about changing the laws, that there were discrepancies and inconsistencies in J.B.'s testimony. His claim that J.B. said the defendant did not physically touch her and that the lack of marks on her body showed the defendant did not use force. And as for your final brief, the defendant again discussed discrepancies and inconsistencies in J.B.'s testimony. He states the people's arguments in response to these arguments in his brief, but in his main brief are speculative and unconvincing, and the arguments J.B. may have fabricated historically. These are all credibility issues, which the semi-court considered in its closely balanced analysis. I cannot reasonably claim as a replied reason that the people's response of arguments to supporting authority is improper. As we did in our own brief, the people asked this court to conclude that the evidence was not closely balanced and declined plain error review of the solution. Let me ask you, I don't know what's next on your agenda, but let's talk about the Krenkel issue. The third issue. Yes, sir. Well, let me just see if I understand your argument. Look, he already had a Krenkel hearing, and so one's enough. And at some point later, I think at sentencing, defense counsel said, gee, my client's got some problems with what I'm doing here. And the trial judge blew it off and said, well, we already had a Krenkel hearing. And so one's enough. Well, in that particular situation, the defense counsel brought up some undefined claims of defendant, and they were never fleshed out. Well, exactly. And isn't that what a Krenkel hearing is to do, is to flesh those things out and say, well, gee, for example, what are his complaints? Or, Mr. Defendant, what are your complaints? Isn't that the whole purpose of a Krenkel hearing? Well, Your Honor, that issue was we have some specific complaints that have been made, but we didn't have any. This was already after the complete, full Krenkel hearing where both sides got to offer all, you know, the defendant was asked, do you have anything else? Do you have anything else? That sort of thing during his Krenkel, and he didn't bring up any other issues. And then they come back later for a sentencing hearing and says, my client's got some further gripes or criticisms or something, and the trial judge simply said, well, we've already had a Krenkel hearing. Let's go to that effect. And so is there any case law to support the notion that you only get one shot at a Krenkel hearing? No, not to my knowledge, Your Honor, that you only get one shot. And certainly you could bring those up in a post-conviction petition. It flushes out completely in an evidentiary hearing. You can bring them up before, though, too. I'm sorry, Your Honor? You could also bring them up before. Certainly, certainly. And the judge could have had a second Krenkel hearing. There's no dispute that he could have done so. But the defendant can still have his claims heard. He hasn't missed them. Just because if the judge is considered to have erred in doing that, then he still can bring those in a post-conviction petition, still have a full hearing evidentiary hearing on those claims if they get past the first and second stage review of his petition. So this has no prejudice to men in any way in that he already had the full Krenkel. He still has an opportunity to gain a review through the PC. Is that true if we rule that he didn't need to do another Krenkel hearing? How do you raise it again? Wouldn't it be decided? Would it be decided here on this appeal? How does he get a second chance at it? These issues would be about the ineffective assistance claims that were made through the Krenkel, through his motion that got him to the Krenkel hearing. If he has different claims that he raises in the post-conviction, he can still bring those claims to the post-conviction petition. This does not force him from bringing up additional claims that he may be able to flush out later on or even gain new evidence on and bring it up through the post-conviction. Well, I would anticipate the State's response might have been, well, he could have raised those in the trial court and could have been dealt with on direct appeal, therefore he's stopped from bringing them here. Well, he couldn't bring those specific claims on direct appeal because, as you point out, we don't know what those claims were. He didn't have a second Krenkel hearing. There were not any specific claims raised. He just said that he thinks there are some other things that he brought. Well, isn't that, in the normal course of events, the way these Krenkel hearings generally get generated, he said, hey, Judge, I'm not happy with my lawyer. What's your problem? What did your lawyer do wrong? I don't disagree with you, Your Honor. So it seems to me that that's about ten-ninths of the time that's the way a Krenkel hearing gets instigated by somebody. And this is a little unusual. I haven't seen many cases where we have a full Krenkel hearing and then all of a sudden the defendant comes up. I mean, it happens, certainly. But it's kind of a last-minute situation. We're already sentencing, we already had the Krenkel hearing. Oh, by the way, I think I forgot something. And he can still raise it. I acknowledge the fact that it's not necessarily forgetting something. It's something else that's come up since the last one. Facing a sentencing hearing. And at the end of the day, that saves you and us time, doesn't it? To do it at that point? Certainly, yes. I'm not saying that the judge was absolutely correct in not holding a second Krenkel hearing. I'm saying that he's not opposed from raising these same issues. If we send him back for a Krenkel, we'll have a Krenkel hearing. Then he'll appeal. If he loses, then we'll have a post-conviction opportunity. So we're just going to be spinning our wheels to some extent. If he brings these same claims and flushes them out of the post-conviction, then he has the appropriate opportunity at this point to raise those claims, even though the judge more properly should have had a second Krenkel on those rather vague but still a claim of ineffective assistance. Are there any other questions, Your Honor? Thank you. And we ask that you defer. Counsel. Just quickly, Your Honor. First, the first argument regarding Sebi did or did not defend Moore's claim of insufficient evidence. To the extent that Sebi looked at the credibility of the different sides' testimony, whether or not there was objective evidence that contradicted it, not just simply whether or not the reviewing or trial court reviewing for the bail prior to that found that the witnesses credible enough. Again, he closely balanced unlined sufficiency of evidence. You're not looking at the evidence in the most favorable state. It's just a question of the state of the evidence as such that the jury might have come to a different conclusion in the absence of the defendant there. And there's a Krenkel issue. The whole point of Krenkel is to try to trust anything that's out in the trial court where they can be addressed in the most efficient way and hopefully avoid any post-conviction. So there's absolutely no reason why a trial court should not have addressed Revelle's consecutive claims. And the Ares Court shows that all you have to say is that if I can assist it, you don't have to question it. So based on the whole point of Krenkel and our Supreme Court position in the Ares Court, the trial court did err. What was exactly the defendant's complaint? I don't know. It wasn't the defendant who raised it, was it? No, when he was speaking through his attorney, the attorney brought it to the court's attention. So all it means to do is be brought to the court's attention if that triggers the duty of the Krenkel. So if you have any other questions, I'll just ask you to either reverse and re-manage the trial under Argument 1 or 2, re-manage the Krenkel proceedings under Argument 30, or in the very least, reverse the criminal sexual assault conviction under Argument 4. Thank you. If you'd like to take this matter under advisement or under decision.